**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROLLINS, INC. and ORKIN, INC. (*f/k/a*
Orkin Exterminating Co., Inc.),**

**Plaintiff,**

**-vs-**                                            **Case No.  6:05-cv-671-Orl-19KRS**

**CYNTHIA GARRETT, on behalf of herself
and all those similarly situated**

**Defendants.**

_____

**ORDER**

This case comes before the Court on the fo

lowing:

1.    Plaintiffs Rollins, Inc.'s and Orkin, Inc.'s Application to Vacate Arbitration Award.
      (Doc. No. 1, filed on May 4, 2005).  Plaintiffs' Brief in Support of Application to
      Vacate Arbitration Award.  (Doc. No. 2, filed on May 4, 2005).

2.    Defendant Cynthia Garrett's Response to Plaintiffs' Application to Vacate Arbitration
      Award.  (Doc. No. 22, filed on June 9, 2005).

**Background**

On May 15 1995, Cynthia Garrett ("Garrett") entered into a contract with Orkin Exterminating

Company, Inc. for treatment of her property to protect against subterranean termites.  (Doc. No. 2,

filed on May 4, 2005, Ex. 23, "Contract").  On June 23, 2004, Garrett filed a demand with the

American Arbitration Association ("AAA") for class action arbitration of a dispute arising out of the

-1-

contract.  (Doc. No. 2, Ex. 1, "Arbitration Demand").  In the arbitration demand, Garrett stated that she

sought injunctive relief, declaratory relief, relief for compensatory damages, treble damages, punitive

damages, and attorneys' fees and costs on behalf of herself and others similarly situated for Orkin

Exterminating Company, Inc.'s violation of Florida's Deceptive and Unfair Trade Practices Act,

violation of RICO, and for breach of contract.  (*Id.*)  Garrett estimated that the amount of

compensatory damages for each individual member of the purported class action is between $10,000 to

$75,000 exclusive of punitive damages, treble damages, attorney's fees and costs.  (*Id.*)

The contract between Garrett and Orkin Exterminating Company, Inc. contained a provision

requiring four hours of mediation in the event of any dispute arising out of or relating to the contract.

(Doc. No. 2, Ex. 23).  If the mediation procedure failed to resolve the dispute, then the dispute would

be resolved by binding arbitration.  (*Id.*)  The mediation/arbitration provision provides:

> In the event of any dispute (as defined herein below) arising out of or relating to this
> contract, or the breach thereof, the parties first agree to participate in at least four (4)
> hours of mediation in accordance with the commercial mediation rules of the American
> Arbitration Association, before having recourse to arbitration, or a judicial forum
> subsequent thereto.
>
> If the mediation procedure provided for herein does not resolve any such dispute, the
> parties agree that all disputes between the parties shall be resolved by binding
> arbitration administered by the American Arbitration Association in accordance with its
> commercial arbitration rules and pursuant to the federal arbitration act, 9 U.S.C. Section
> 1 et seq. [sic] judgment upon the award rendered by the arbitrator may be entered in any
> court having jurisdiction.
>
> The term "disputes" shall mean any action, dispute, claim or controversy of any kind,
> whether in contract or in tort, under either statutory or common law or both, now
> existing or hereafter arising between the parties in any way pertaining to (1) this
> contract or any related agreement, document, or instrument; (2) any incidents,
> omissions, acts, practices, or occurrences arising out of any service or product furnished
> or agreed to be furnished under this contract causing property damage to either party
> and it is asserted that the other party or its agents, employees, or representatives may be
> liable, in whole or in part; (3) all claims by either party against the other for actual,
> consequential, punitive, exemplary or statutory damage, attorneys [sic] fees or penalties

of any kind whatever; and (4) specific performance or the recovery of damages in tort or pursuant to the provisions of the deceptive trade practices act.  The award of the arbitrators issued pursuant hereto shall be final, binding, and non-appealable.

(*Id.*)

Pursuant to the AAA Supplementary Rules for Class Arbitrations, the arbitrators have the responsibility to determine, as a threshold matter, whether the applicable arbitration clause permits the arbitration to proceed on or behalf of or against a class.  (Doc. No. 2, Ex. 22, "Supplementary Rules for Class Arbitrations, " p.1).  Following the issuance of the clause construction award, the arbitrators shall stay all proceedings for at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate the clause construction award.  (*Id.*)

On November 30, 2003, Garrett submitted her brief and memorandum in support of maintaining the arbitration as a class action.  (Doc. No. 2, Ex. 3, "Garrett's Brief).  Garrett argued that the plain language of the arbitration agreement did not foreclose her right to proceed on a class action basis.  (*Id.* at 8).  Garrett claimed that not a single provision of the contract stipulates that she waived class arbitration.  (*Id.*)  Garrett also argued that under *Powertel v. Bexley*, 743 So.2d 570, 576 (Fla. 1st DCA 1999), and under Florida unconscionability jurisprudence, Orkin cannot prohibit class arbitration.  (*Id.* at 11).

On January 14, 2005, Respondents Rollins, Inc. and Orkin, Inc. (f/k/a Orkin Exterminating Company, Inc.) ("Orkin") submitted a memorandum on the arbitration clause construction issue. (Doc. No. 2, Ex. 4, "Orkin's Brief").  Orkin argued that the mediation/arbitration provision makes mediation a precondition to arbitration and the class members have not mediated their claims.  (*Id.* at 4).  Furthermore, Orkin claimed that the language in the provision demonstrates a contractual intent for claims to be arbitrated on an individual basis.  (*Id.*)

In her reply brief, Garrett argued that Orkin failed to mention that she attempted to mediate as a

class representative, but those efforts were rejected by Orkin.  (Doc. No. 2, Ex. 5, "Garrett's Reply Brief," p. 3).  Garrett argued that Orkin could not seek to profit from its own wrong by invoking mediation after having rejected her request for mediation.  (*Id.* at 3).  Garrett also argued that Orkin misrepresented substantive Florida contract law at the time that the contract was executed.  (*Id.* at 6).

Douglas Brown, Orkin's attorney, testified by affidavit that Garrett demanded to mediate on behalf of all putative class members.  (Doc. No. 2, Ex. 6, ¶ 6).  Orkin declined to mediate the claims of the class members because Garrett did not have the authority to represent or mediate on behalf of any class members.  (*Id.*)  Orkin, however, agreed to mediate Garrett's individual claim.  (*Id.*)  On June 10, 2004, both parties appeared at the scheduled mediation but did not reach any agreement.  (*Id.* at ¶ 8).

On April 4, 2005, the AAA issued a Partial Final Clause Construction Award.  (Doc. No. 2, Ex. 8, "Partial Final Clause Construction Award").  The arbitration panel found that Florida appellate courts have not determined if class arbitration is appropriate when the arbitration agreement is silent on that issue.  (*Id.* at 4).  In considering all of the general propositions of Florida law in making its decision, the panel found that although the contract requires individual mediation, the agreement is silent on the class certification issue.  (*Id.* at 4, 5).  The panel did not find the mediation requirement to be inconsistent with or a prohibition on class arbitration.  (*Id.* at 5).  An individual consumer will have the ability to decline class action participation and pursue his or her claim on an individual basis.  (*Id.*) Because the language of the agreement does not implicitly or explicitly preclude class actions, the panel interpreted the language of the agreement to include consideration of class action issues.  (*Id.* at 6).  The panel retained jurisdiction of the dispute, but stayed all further proceedings for a period of thirty days to allow the parties to appeal the award in a court of competent jurisdiction.  (*Id.*)

On May 4, 2005, Rollins, Inc., and Orkin, Inc. ("Orkin") applied, pursuant to 9 U.S.C. section

10, to vacate the Partial Final Clause Construction Award.  (Doc. No. 1).  Orkin argues that the Court should vacate the award because the panel exceeded its powers, that enforcement of the award would violate Florida and federal public policy against class arbitrations, and that a prohibition on class arbitration is not unconscionable.  Cynthia Garrett argues that the Court lacks jurisdiction to adjudicate Orkin's motion, that Orkin applied the wrong standard of review, and that there is substantial support for the panel's decision based on contract principles.

This Order analyzes Orkin's Motion to Vacate the Partial Final Construction Clause Award.

## Standard of Review

The Court's review of commercial arbitration awards is controlled by the Federal Arbitration Act ("FAA"), and such judicial review is very limited.  *See* 9 U.S.C.A. §§ 1-16 (2002); *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 778 (11th Cir. 1993).  The FAA imposes a heavy presumption in favor of confirming arbitration awards.  *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (11th Cir. 2002) (internal citation omitted).  The FAA provides four narrow grounds for vacatur: 1) the award was procured by corruption, fraud, or undue means; 2) there was evident partiality or corruption in the arbitrators; 3) the arbitrators are guilty of misconduct in refusing to postpone the hearing or in refusing to hear evidence pertinent and material to the controversy; or 4) the arbitrators exceed their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C. § 10(a).  The burden is on the party requesting vacatur of the award to prove one of these four bases.  *Riccard*, 307 F.3d at 1289.

In addition to these four statutory bases, the Eleventh Circuit has recognized three additional non-statutory grounds upon which the Court may vacate an arbitration award.  *Brown*, 994 F.2d at 779.  First, an arbitration award may be vacated if it is arbitrary and capricious.  *Id.* (internal citations

omitted). An award is arbitrary and capricious only if "'a ground for the arbitrator's decision cannot be inferred from the facts of the case.'" *A1 Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992) (internal citations omitted). Second, the Court may vacate an arbitration award if enforcement of the award is contrary to public policy. *Brown*, 994 F.2d at 779. (internal citations omitted). Finally, an arbitration award may be vacated if the award was entered in "manifest disregard of the law." *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1988) (citing *Montes v. Shearson Lehman Bros, Inc.*, 128 F.3d 1456 (11th Cir. 1997)). An arbitration panel that incorrectly interprets the law has not manifestly disregarded it. *Montes*, 128 F.3d at 1461. In order to manifestly disregard the law, "one must be conscious of the law and deliberately ignore it." *Id.* (internal citation omitted).

When analyzing a motion to vacate an arbitration award on a non-statutory ground, the Court must begin the query by examining the award itself. *Brown*, 994 F.2d at 779. If, as in the instant case, the award is not silent as to its rationale, the moving party may raise any statutory or non-statutory ground in support of its motion to vacate the award. *Id.* (internal citation omitted).

## Analysis

### *1. Garrett's Argument that the Court Lacks Jurisdiction*

In a footnote to her brief and without explanatory analysis, Garrett asserts that the Court must demonstrate its jurisdiction to adjudicate this dispute. Garrett contends that Orkin has failed to cite a provision of the American Arbitration Association or the United States Code which expressly permits a district court to review an arbitrator's decision determining the permissibility of a class action.

The Eleventh Circuit has held that 9 U.S.C. section 10, which allows a district court to vacate an arbitration award, does not confer federal subject matter jurisdiction. *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1470 (11th Cir. 1997).

Orkin argues that the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 109 P.L. 2 (2005).  Under the act, the term "class action" means "any civil action filed in a district court of the United States under rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representatives of a class action."  28 U.S.C.A. § 1711(2) (2005).  Because the instant case does not fall within this definition, the Class Action Fairness Act is not applicable and does not confer subject matter jurisdiction.

Orkin contends that because Garrett asserted a claim under RICO, the Court has jurisdiction over matters relating to the arbitration.  Orkin has moved to vacate the arbitration award based on its contention that the panel exceeded the bounds of its authority under Florida *state* law and public policy which formed the basis of the panel's interpretation of the agreement.[1]  Because the adjudication of this dispute would depend on the Court's interpretation of Florida law, Orkin's right to relief does not depend on the "resolution of a substantial question of federal law."  *Baltin*, 128 F.3d at 1472 (explaining that the plaintiff's right to relief did not depend on the resolution of a substantial question of federal law where the plaintiff moved to vacate, modify, or correct the arbitration award based only on alleged misdeed of the arbitrators, not based on any violation of federal law) (internal citation and quotation omitted) (internal citation omitted).

In the alternative, Orkin claims that the Court has diversity jurisdiction because Rollins and Orkin are both Delaware corporations with their principal places of business in Georgia, Garrett is a

---

[1] While Orkin raises the argument that federal policy prohibits classwide arbitration, the bulk of Orkin's argument focuses on state law and policy.

citizen of Florida, and the amount in controversy is greater than $75,000.

The Court has researched the issue of the existence of subject matter jurisdiction in interpreting state contract law and policy under an arbitration agreement where the parties are from different states and the substantive claims involve an amount in controversy greater than $75,000.  The Court's independent research has not produced a case precluding the exercise of jurisdiction under such circumstances, and Garrett has not cited a case to the Court demonstrating that subject matter jurisdiction is lacking under these circumstances.  Therefore, the Court finds that it has subject matter jurisdiction in this case due to diversity between the parties and the amount of damages claimed.

## 2.  *Garrett's Argument that Orkin Articulated the Wrong Standard of Review*

Garrett argues that Orkin's application to vacate is facially insufficient because it fails to articulate the proper standard of review.  Garrett contends that Orkin's primary argument is that the panel exceeded its powers under 9 U.S.C. section 10(a)(4) in interpreting Orkin's agreement with Garrett to permit class action arbitration.  Garrett claims that Orkin has not argued that the Partial Final Clause Construction Award was made in "manifest disregard of the law" or was "irrational, arbitrary, or capricious" under the non-statutory standard of review recognized by the Eleventh Circuit.  Garrett argues that the Court must determine whether the panel manifestly disregarded the law.

Garrett and Orkin ask the Court to apply different standards of review in examining the Partial Final Clause Construction Award.  Orkin asks the Court to set aside the award because the panel exceeded its powers under 9 U.S.C. section 10(a)(4) and because the award violates public policy.  On the other hand, Garrett claims that the "manifest disregard of the law" standard is the proper review to apply.

The inquiry under section 10(a)(4) focuses on "whether the arbitrators had the power, based on

the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997) (internal citation omitted).  If arbitrators " 'rule [] on issues not presented to [them] by the parties, they have exceeded [their] authority and the award must be vacated.'" *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 515 (2d Cir. 1991) (internal citation omitted).

In the instant case, there is no dispute as to whether Garrett's claim may be arbitrated under the terms of the arbitration agreement.  In fact, the mediation/arbitration agreement specifically requires any dispute to be arbitrated in the event mediation fails.  Because the contract between Garrett and Orkin explicitly requires arbitration of disputes relating to the agreement, it could be said that the decision of whether to proceed on a classwide basis is procedural rather than substantive in nature and that the issue of whether to permit class arbitration should be examined in light of the "manifest disregard of the law" standard.  Put another way, if the panel has the ability to arbitrate one claim relating to the contract, then arguably it would have the power to regulate other claims arising out of the contract on a classwide basis.  However, the decision to provide a procedural mechanism that permits class action arbitration, especially *if* such a procedural mechanism is not permitted under the terms of the agreement, would go beyond the powers of the arbitration panel.  Therefore, the Court finds that the "manifest disregard of the law" standard does not apply.

### 3. Orkin's Argument that the Court should Vacate the Clause Construction Award Because the Panel Exceeded its Powers

Orkin argues that the panel exceeded its powers in finding that the mediation/arbitration provision permitted class arbitration without first having the claims mediated.  Orkin claims that pursuant to Florida law, the Court must given meaning and effect to the entire provision by enforcing the mediation precondition. By permitting class arbitration in this case, Orkin contends that the panel's

interpretation created a conflict with the "mediate first" part of the provision.  By vitiating the importance of the mediation provision, Orkin argues that the panel failed to distinguish between individual and class action cases, trumped its right to mediate disputes, and ignored Florida public policy which favors mediation in order to promote efficiency and lower costs.

An arbitrator's authority is ultimately governed by the terms of the arbitration agreement.  *New Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991).  The Court will apply Florida law in interpreting the mediation/arbitration provision.  *See, e.g., Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 (11th Cir. 2004).

The issue before the Court is whether the language in the agreement demonstrates a contractual intent that claims be arbitrated only on an individual basis.  Orkin and Garrett cite a number of general principles of contract law which are unhelpful in the resolution of this case.  Orkin claims that the Court must give effect to the entire agreement and must avoid interpretations that create unnecessary conflict.  Garrett contends that the contract is ambiguous, that such an ambiguity should be construed against Orkin, that items in a category exclude others not listed, and that a contract should be construed to assure mutuality and reciprocal obligations.

Arguments can be advanced on both sides of this issue.  On the one hand, the agreement uses the terms "parties" and "either party" and does not use the term "class arbitration," which may indicate that class arbitrations are prohibited.  On the other hand, the agreement is categorically silent on the issue of whether classwide arbitration is permitted, and explicit language may be necessary to support the conclusion that the agreement precludes classwide arbitration, especially given the federal policy in favor of arbitration.  The term "disputes" in the agreement is broad and could arguably include classwide arbitration.  According to the contract, the term disputes shall mean "any action, dispute,

-10-

claim or controversy of *any kind.*"  (Doc. No. 2, Ex. 23) (emphasis added).  The silence of the

agreement on this important issue, the general principles of Florida contract law cited to the Court by

the parties, and the Court's independent research on Florida contract law has not produced a

satisfactory answer to the question of whether an arbitration agreement that is silent on the issue of

collective arbitration ultimately permits classwide arbitration to take place.

      The Court has independently researched how other federal courts have addressed this issue

under the Federal Arbitration Act.  In *Protective Life Insurance Corporation v. Lincoln National Life

Insurance Corporation*, 873 F.2d 281, 282 (11th Cir. 1989), the Eleventh Circuit addressed the issue of

whether a district court may consolidate arbitration proceedings if the parties did not provide for

consolidation in their arbitration agreement.  The appellate court concluded that collective arbitration

was not permitted under such circumstances, reasoning that parties may negotiate for and include

provisions for consolidation in their agreements, but in the absence of such provisions, federal courts

may not read such provisions into agreements.  *Id.*

      In *Randolph v. Green Tree Financial Corp-Alabama*, 244 F.3d 814, 816 (11th Cir. 2001), the

Eleventh Circuit clarified its holding in *Protective Life*.  Noting that other federal courts that have

addressed this issue found that collective arbitration is available only if it is explicitly provided for in

the agreement, the appellate court explained that arbitrations may be consolidated only if the

arbitration agreements provide for consolidation.  *Id.* at 815-16.  The Eleventh Circuit elaborated that

its reasoning in *Protective Life* may dictate that it join other federal courts in holding that collective

arbitration is available only if explicitly provided in the agreement.[2]  *Id.*  However, the appellate court

_____

    [2] The Eleventh Circuit explained that its reasoning in *Protective Life* may dictate that it
join the Seventh Circuit, *Champ v. Siegel Trading Co.*, 55 F.3d 269 (7th Cir. 1995) and the
District of Minnesota, *Gammara v. Thorp Consumer Discount Co.*, 828 F.Supp. 673, 674 (D.

concluded its analysis by finding that it had no occasion to decide that issue because the plaintiff had

not properly preserved the issue for appeal.  *Id.*

In *Green Tree Financial Corporation v. Bazzle*, 539 U.S. 444, 447 (2003), the United States

Supreme Court reviewed a South Carolina Supreme Court decision which analyzed arbitration clauses

in contracts between a commercial lender and its customers.[3]  The South Carolina Supreme Court held

that the arbitration clauses were silent on the issue of whether collective arbitration was permitted and

---

Minn. 1993), in holding that classwide relief may not be sought if the agreement is silent on the
type of remedy.

In *Champ*, the Seventh Circuit analyzed whether a district court has the authority to
certify an individual plaintiff as a class representative of other aggrieved parties whose claims
are subject to arbitration.  55 F.3d at 270.  The Seventh Circuit held that absent an explicit
provision in the arbitration agreement providing for collective arbitration, a district court lacks
the authority to certify class arbitration.  *Id.*  The appellate court based its holding on the
language in 9 U.S.C. section 4 which provides that district courts enforce arbitration agreements
in "'in accordance with the terms of the agreement.'"  *Id.* at 274 (quoting 9 U.S.C. § 4).  The
Seventh Circuit found the Second Circuit's reasoning in *Government of United Kingdom v.
Boeing Company*, 998 F.2d 68, 74 (2d Cir. 1993), to be particularly helpful, finding that the trial
court's chief concern under the FAA is to enforce the arbitration agreement as the parties wrote
it.  *Id.*  (internal citation omitted).

In *Gammara*, the trial court in the District of Minnesota relied on 9 U.S.C. section 4 and
held that when an arbitration agreement makes no provision for class treatment of disputes, the
district court is without power to order the matter to proceed to arbitration as a class action.  828
F.Supp. at 674.

[3] The arbitration clause stated: "'ARBITRATION–All disputes, claims, or controversies
arising from or relating to this contract or the relationships which result from this contract ...shall
be resolved by binding arbitration by one arbitrator selected by us with consent of you.  This
arbitration contract is made pursuant to a transaction in interstate commerce, and shall be
governed by the Federal Arbitration Act at 9 U.S.C. section 1....THE PARTIES
VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY
TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT
TO COURT ACTION BY U.S. (AS PROVIDED HEREIN)...The parties agree and understand
that the arbitrator shall have all powers provided by the law and the contract.  These powers shall
include all legal and equitable remedies, including, but not limited to, money damages,
declaratory relief, and injunctive relief."  *Bazzle*, 539 U.S. at 448 (internal citation omitted)
(capitalization in original).

-12-

that South Carolina law permitted class arbitration under such circumstances. *Id.* Explaining that it could not resolve the issue of whether the contracts were silent and thus forbade collective arbitration, the U.S. Supreme Court based its reluctance to do so on the fact that the issue was a matter of state law as well as a matter for the arbitrator to decide. *Id.* Because the parties had not received an arbitrator's decision on the issue of contract interpretation, the U.S. Supreme Court vacated the judgment of the South Carolina Supreme Court and remanded the case so that the question may be resolved in arbitration. *Id.* The Supreme Court explained that the parties had agreed to submit to arbitration "'[*a*]*ll* disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract." *Id.* at 451 (internal citation omitted) (emphasis added by the Court).

In light of the Supreme Court's decision in *Bazzle*, *Protective Life* and *Randolph* are not instructive in this case. First, *Protective Life* and *Randolph* were decided as a matter of policy under the Federal Arbitration Act whereas *Bazzle* instructs courts and arbitrators to apply state contract law in interpreting arbitration agreements. Second, the issue presented in *Protective Life* and *Randolph* was whether district courts have the power to consolidate arbitration proceedings under Federal Rules of Civil Procedure 42(a) and 81(a)(3). *Protective Life*, 873 F.2d at 283 n.1; *see Randolph*, 244 F.3d at 816. Consolidated arbitrations under the Federal Rules of Civil Procedure are different from collective arbitrations. A consolidated arbitration proceeding typically involves a tripartite relationship in which the parties in dispute have a contract with a third party, but not with each other whereas in classwide arbitrations all the plaintiffs have a contract directly with the defendant. *See, e.g., Laborers' Intern. Union of North America, Local Union No. 309, ALF-CIO v. WW. Bennett Constr. Co, Inc.*, 686 F.2d 1267, 1273 (7th Cir. 1982) (explaining that consolidated arbitrations are often used as "tripartite" devices). The Eleventh Circuit in *Protective Life* and *Randolph* was not faced with the situation

presented in the instant case, that is whether an arbitration panel exceeded the bounds of its authority under 9 U.S.C. section 10(a)(4) or violated public policy by permitting classwide arbitration when the agreement is silent on that issue.

Three reasons support classwide arbitration when an arbitration agreement is silent as to the permissibility of collective arbitration. First, arbitration enjoys a favored status under both Florida and federal law because of its simplicity, informality, and expeditious nature. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985); *See, e.g. KFC Nat'l Mgmt. Co. v. Beauregard*, 739 So.2d 630, 631 (5th DCA 1999) ("[p]ublic policy favors arbitration as an efficient means of settling disputes, because it avoids the delays and expenses of litigation.").

Second, considerations of Florida's substantive law regarding the construction of ambiguous contract provisions supports the allowance of classwide arbitration under these facts. *See City of Homestead v. Johnson*. 760 So.2d 80, 84 (Fla. 2000) ("[a]n ambiguous term in a contract is to be construed against the drafter"). Because the drafter is in a position to exert influence over the terms in the contract, the terms of the contract should be construed against the drafter, in this case Orkin, when an agreement is silent as to a particular issue. *Id.*

Finally, important public policy considerations support the conclusion that a contract's silence regarding collective arbitration should not be construed as precluding arbitration on a classwide basis. Arbitration proceedings are meant to save time and reduce costs and expenses that parties often incur litigating issues in the judicial system, and allowing classwide arbitrations advances this cost saving policy. In *Bazzle*, the class arbitration consisted of 1,889 individuals, and it cannot be said that arbitrating each of these claims individually would be more efficient than arbitrating these claims on a classwide basis. *Bazzle v. Green Tree Fin. Corp.,* 569 S.E. 2d 349, 352-53 (S.C. 2002), *judgment*

*vacated on other grounds by* 539 U.S. 444 (2003).  Even if there were any cost savings by requiring all claims to be individually arbitrated, it is unlikely that the cost savings would compensate for the unfairness in forcing hundreds of individuals to assert claims involving common issues of fact and law against a corporate defendant which in many instances may have superior resources to its adversaries. If the right to classwide arbitration was automatically eliminated based on silence in an agreement, the chilling of interests common to a group would be substantial.  Class litigation traditionally has a deterrent effect on a manufacturer or service provider, and such a deterrent effect would be absent if the Court vacated the panel's award under the facts of this case.  For these reasons, the Court finds that the arbitration panel did not exceed its power under 9 U.S.C. section 10(a)(4) by finding that an arbitration agreement that is silent on the issue of classwide arbitration permits classwide arbitration to take place.

**4.  Orkin's Argument that the Court should Vacate the Arbitration Award Because Enforcement of the Award would Violate Florida and Federal Public Policy Against Class Arbitrations.**

Orkin claims that the arbitration panel's interpretation of the arbitration clause violates Florida law against class arbitration.  Orkin contends that Florida law, while favoring arbitrations in a judicial forum, does not favor class actions in an arbitral form.  Orkin also argues that in 1995 when Orkin and Garrett entered into the contract, the majority of courts that had considered this particular issue had decided that they would not allow class arbitration unless the agreement explicitly permitted it. Finally, Orkin argues that class arbitration conflicts with federal due process concerns.  The Court will address each of these arguments in turn.

Orkin concedes that Florida law and public policy recognize the utility of arbitration because such procedures generally provide a more efficient and expedient way to resolve disputes as opposed to traditional litigation.  Orkin claims that the advantages of arbitration are undermined when

arbitration is burdened with all of the trappings necessary for class actions.  Rather than focusing the dispute on a quick and efficient resolution of the merits of the plaintiff's individual claim, Orkin argues that class actions lead to side disputes over such issues as whether the putative class meets the requirements necessary for certification, whether the notice provided to class members is adequate, and how class members' claims are to be administered.

The Court has reviewed the cases cited in Orkin's brief .  Not one of these cases supports Orkin's contention that Florida public policy disfavors class actions that take place in an arbitral forum as opposed to a judicial forum.  While Orkin's policy argument is creative, it is ultimately unavailing. As previously discussed, classwide arbitration could ultimately save costs in the long run that the parties would incur if hundreds or even thousands of claims were arbitrated on an individual basis.  It would be a waste of time and resources if arbitration panels had to decide common questions of law and fact for hundreds or thousands of parties.  Therefore, Orkin's argument that Florida public policy disfavors classwide arbitration is not well taken.

Orkin claims that in 1995 when the parties entered into the contract, the majority of courts that had considered the issue had decided that class arbitrations were not permitted unless the arbitration agreement specifically and expressly permitted it.  Orkin cites *Champ v. Siegel Trading Company, Inc.*, 55 F.3d 269 (7th Cir. 1995), *Government of United Kingdom v. Boeing*, 998 F.2d 68, 71 (2d Cir. 1993), *American Centennial Insurance Company v. National Casualty Company*, 951 F.2d 107, 108 (6th Cir. 1991), *Basler v. Continental Grain Company*, 900 F.2d 1193, 1195 (8th Cir. 1995), and *Weherhauser Company v. Western Seas Shipping Company*, 743 F.2d 635, 637 (9th Cir. 1984), in support of its argument.  These cases address the authority of the district court to consolidate arbitration proceedings under Federal Rules of Civil Procedure 42(a) and 81(a)(3) which, as previously

explained, is different from classwide arbitration.  Furthermore, the courts in these cases based their interpretations of the arbitration clauses on the policies underlying the Federal Arbitration Act whereas *Bazzle* instructs arbitrators and courts to apply state law in analyzing whether an arbitration clause permits classwide arbitration.  Thus, Orkin's argument that the majority of courts have held that classwide arbitration is not allowed unless the arbitration agreement specifically and expressly permits classwide arbitration is without merit.

Without citing any authority, Orkin argues that it is against federal policy to permit class arbitration in the absence of express consent by the parties because any judgment entered on an award would violate the constitutional due process rights of the absent class members.  Orkin claims that under Florida law, actual notice to absent class members in a court proceeding is not required, but rather only a reasonable effort to notify them of claims is necessary.  Orkin argues that this procedure may satisfy due process standards where the judicial authority is vested in the courts as a matter of law, but the power of arbitrators to decide disputes arises only where the parties expressly agree to grant them such power.

In any class action proceeding, an individual consumer will have the opportunity to decline to participate in the class action and avail himself of the right to proceed on an individual basis which meets the constitutional requirements of due process.  Class actions in judicial forums are routinely allowed and have been found to satisfy due process considerations.  Orkin has failed to cite to any authority to support its contention that procedures regarding class action litigation in a judicial forum are so different from procedures regarding classwide arbitration that due process is violated by actions

in the latter forum.  Thus, Orkin's argument is not well taken.[4]

**Conclusion**

Based on the foregoing, the Court **DENIES** Rollins, Inc.'s and Orkin, Inc.'s Motion to Vacate

the Partial the Arbitration Award.  (Doc. No. 1, filed on May 4, 2005).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June _27th_____ 2005.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

---

[4] Because Orkin has failed to establish any statutory or non-statutory basis to vacate the panel's decision, the Court will not analyze Orkin's argument that a prohibition on class arbitration is not unconscionable.