UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROLLINS, INC., AND ORKIN, INC. (f/k/a
Orkin Exterminating Co., Inc.),

                    Plaintiffs,

-vs.-                                                          Case No.:  6:05-cv-671-PCF-KRS

CYNTHIA GARRETT, on behalf of herself
and all those similarly situated,

                    Defendants.
_____

## ORDER

This case comes before the Court on the following:

1.      The Motion for Injunction to Stay Arbitration Proceedings Pending Appeal, filed

        by Plaintiffs Rollins, Inc. and Orkin, Inc. (f/k/a Orkin Exterminating Co., Inc.

        (Doc. No. 34-1, filed on August 22, 2005);

2.      Defendant's Response to Plaintiffs' Motion for Injunction to Stay Arbitration

        Proceedings Pending Appeal, filed by Defendant Cynthia Garrett.  (Doc. No. 35,

        filed on August 30, 2005).

## Background

On May 15 1995, Cynthia Garrett ("Garrett") entered into a contract with Orkin

Exterminating Company, Inc. for treatment of her property to protect against subterranean

termites.  (Doc. No. 2, filed on May 4, 2005, Ex. 23, "Contract").  On June 23, 2004, Garrett

filed a demand with the American Arbitration Association ("AAA") for class action arbitration

of a dispute arising out of the contract.  (Doc. No. 2, Ex. 1, "Arbitration Demand").  In the

arbitration demand, Garrett stated that she sought injunctive relief, declaratory relief, relief for

compensatory damages, treble damages, punitive damages, and attorneys' fees and costs on

behalf of herself and others similarly situated for Orkin Exterminating Company, Inc.'s violation

of Florida's Deceptive and Unfair Trade Practices Act and RICO and for breach of contract.

(*Id.*)  Garrett estimated that the amount of compensatory damages for each individual member of

the purported class action is between $10,000 to $75,000 exclusive of punitive damages, treble

damages, attorney's fees and costs.  (*Id.*)

The contract between Garrett and Orkin Exterminating Company, Inc. contained a

provision requiring four hours of mediation in the event of any dispute arising out of or relating

to the contract.  (Doc. No. 2, Ex. 23).  If the mediation procedure failed to resolve the dispute,

then the dispute was required to be resolved by binding arbitration.  (*Id.*)  Pursuant to the AAA

Supplementary Rules for Class Arbitrations, the arbitrator has the responsibility to determine, as

a threshold matter, whether the applicable arbitration clause permits the arbitration to proceed on

or behalf of or against a class.  (Doc. No. 2, Ex. 22, "Supplementary Rules for Class

Arbitrations").

On November 30, 2003, Garrett submitted her brief and memorandum in support of

maintaining the arbitration as a class action.  (Doc. No. 2, Ex. 3, "Garrett's Brief).  Garrett

argued that the plain language of the arbitration agreement did not foreclose her right to proceed

on a class action basis.  (*Id.* at 8).  Garrett claimed that not a single provision of the contract

stipulates that she waived class arbitration.  (*Id.*)  Garrett also argued that under *Powertel v.*

*Bexley*, 743 So.2d 570, 576 (Fla. 1st DCA 1999), and under Florida unconscionability

jurisprudence, Orkin cannot prohibit class arbitration.  (*Id.* at 11).

On January 14, 2005, Respondents Rollins, Inc. and Orkin, Inc. (f/k/a Orkin

Exterminating Company, Inc.) ("Orkin") submitted a memorandum on the issue of construction

of the arbitration clause.  (Doc. No. 2, Ex. 4, "Orkin's Brief").  Orkin argued that the language in

the provision demonstrates a contractual intent for claims to be arbitrated on an individual basis.

(*Id.*)

On April 4, 2005, the AAA issued a Partial Final Clause Construction Award.  (Doc. No.

2, Ex. 8, "Partial Final Clause Construction Award").  The arbitration panel found that Florida

appellate courts have not determined if class arbitration is appropriate when the arbitration

agreement is silent on that issue.  (*Id.* at 4).  Considering general propositions of Florida law in

making its decision, the panel found that although the contract required individual mediation, the

agreement was silent on the class certification issue.  (*Id.* at 4, 5).  The panel did not find the

mediation requirement to be inconsistent with a prohibition on class arbitration.  (*Id.* at 5).  It

noted that an individual consumer would have the ability to decline class action participation and

pursue his or her claim on an individual basis.  (*Id.*)  Because the language of the agreement did

not implicitly or explicitly preclude class actions, the panel interpreted the language of the

agreement to include consideration of class action issues.  (*Id.* at 6).  The panel retained

jurisdiction of the dispute but stayed all further proceedings for a period of thirty days to allow

the parties to appeal the award in a court of competent jurisdiction.  (*Id.*)

Pursuant to 9 U.S.C. Section 10, Rollins, Inc., and Orkin, Inc. (collectively referred to as

"Orkin") applied on May 4, 2005 to vacate the Partial Final Clause Construction Award.  (Doc.

No. 1).  On June 27, 2005, this Court denied Orkin's motion to vacate, holding that Orkin failed

to establish any statutory or non-statutory basis to vacate the panel's decision.  (Doc. No. 31,

filed on June 27, 2005).  Subsequently, Orkin filed a Notice of Appeal indicating that it would

appeal this Court's decision to the U.S. Court of Appeals for the Eleventh Circuit.  (Doc. No. 33,

filed on July 25, 2005).  Orkin requested that the arbitrators stay the arbitration proceedings

pending the disposition of Orkin's appeal to the Eleventh Circuit, but this request was denied by

the arbitration panel.  (Doc. 34-2, at ¶ 5, filed on August 22, 2005).

On August 22, 2005, Orkin filed a Motion for Injunction in this Court asking it to stay

the arbitration hearings and enjoin Defendant from proceeding with said arbitration until the

Eleventh Circuit rules on Orkin's appeal.  Orkin argues that it has a substantial probability of

success on the merits on appeal, that it will be irreparably harmed if forced to continue

arbitration, that there is a clear absence of substantial harm to other interested persons, and that

the public interest weighs in favor of granting the injunction.  (Doc. 34-1 at pp. 4-7).  In her

response Garrett argues that Orkin fails to show any irreparable harm, cannot demonstrate a

likelihood of success on the merits on appeal, and has taken an appeal that the Eleventh Circuit

may not have jurisdiction to hear.  (Doc. 35 at pp. 2-6).

This Order analyzes Orkin's Motion for an Injunction to Stay the Arbitration Proceedings

Pending Appeal.

### Standard of Review

A district court may grant injunctive relief only if the moving party shows that:  (1) it has

a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the

injunction issues; (3) the threatened injury to the movant outweighs whatever damage the

proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be

adverse to the public interest. *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir.2000) (en banc)

(per curiam).  The issuance of an injunction is an extraordinary remedy, and the moving party

"bears the burden to clearly establish the four prerequisites." *Café 207, Inc. v. St. Johns County*,

989 F.2d 1136, 1137 (11th Cir.1993).  "A showing of irreparable harm is the *sine qua non* of

injunctive relief." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of*

*Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990).  Controlling precedent is also clear that

injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of

success criterion.  *See Siegel*, 234 F.3d at 1176; *see also Grupo Mexicano de Desarrollo v.*

*Alliance Bond Fund, Inc*., 527 U.S. 308, 339 (1999) ("Plaintiffs with questionable claims would

not meet the likelihood of success criterion.").  However, "where the balance of the equities

weighs heavily in favor of granting the injunction, the movant need show only a substantial case

on the merits." *Schiavo* ex rel. *Schindler v. Schiavo*, 403 F.3d 1223, 1241 (11th Cir. 2005)

(internal citation omitted).

### Analysis

#### 1. Irreparable Harm

The only harms which Orkin alleges to constitute irreparable harm are (1) the substantial

time and expense expended by the parties on class certification discovery and briefing; and (2)

the harm resulting from requiring Orkin to continue with an arbitration to which it did not

consent.  (Doc. 34-1 at ¶¶ 7, 13).  Eleventh Circuit precedent is clear, however, that neither of

these situations, even if true, constitutes irreparable injury.  The financial burden of arbitration

does not constitute irreparable injury, as injuries measured in terms of time and money spent in

the absence of an injunction are not deemed irreparable.  *United Paperworkers Int'l, Local #395 v. ITT Rayonier, Inc.*, 752 F.Supp. 427, 431 (M.D. Fla. 1990) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Northeastern Fla. Chapter*, 896 F.2d at 1285 (11th Cir. 1990); *United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir. 1983)).  Furthermore, as the Supreme Court has stated:

> The key word in this consideration is *irreparable*.  Mere injuries, however substantial, in terms of money, time and energy expended in the absence of a stay are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

 *Sampson*, 415 U.S. at 90 (italics in original).

Finally, Orkin's contention that being forced to participate in an arbitration proceeding to which it did not consent amounts to irreparable harm is not well taken.  The harm suffered in having to litigate a dispute in a forum not of one's choosing is no different from the harm suffered after having a motion to dismiss or motion for summary judgment denied, or having one's case transferred or remanded to a different court.  In none of these situations are the harms associated with having to proceed in the forum usually considered "irreparable harm."  *SeeUnited Paperworkers*, 752 F.Supp. at 431 (citing with approval *Graphic Communications Union v. Chicago Tribune Co.*, 779 F.2d 13 (7th Cir. 1985), which strongly suggests that this is not an irreparable injury, and notes a lack of authority to the contrary).

From these cases it clear that if the time, money, anxiety, and other harms associated with participating in an undesired arbitration do not constitute irreparable harm, then *a fortiori*, the time, money, and anxiety associated with merely contesting the class certification decision of arbitration panel cannot either.  For these reasons, Orkin can not demonstrate that failure to grant its Motion would cause it to suffer irreparable harm.

2.  Likelihood of Success on the Merits

Orkin has likewise failed to show that its appeal to the Eleventh Circuit has a substantial

likelihood of success on the merits.  First, as Garrett points out in her Response, it is questionable

whether the Eleventh Circuit will exercise jurisdiction in Orkin's appeal.  (Doc. 35 at ¶ 2a) (noting

that Courts disfavor hearing on appeal non-final orders favoring arbitration).  Assuming, however,

that the Eleventh Circuit does exercise jurisdiction, Orkin has not shown any likelihood of being

successful.  In fact, Orkin simply reasserts much of the same reasoning and many of the same case

holdings this Court found inapposite in ruling on Orkin's Application to Vacate the Arbitration

Award, namely arguing that "there is no principled reason to distinguish between consolidation of

arbitration proceedings and class arbitration proceedings, when determining whether they are

permitted by the arbitration agreement."  (Doc. 34-1 at ¶ 12).

As this Court previously explained, there are, in fact, three principled reasons why Florida

law would support classwide arbitration when an arbitration agreement is silent as to the

permissibility of collective arbitration.  First, Florida's substantive law regarding the construction

of ambiguous contracts would have this Court construe ambiguous terms against the drafter, due to

its unequal bargaining position *vis a vis* the other party.  *See City of Homestead v. Johnson*. 760

So.2d 80, 84 (Fla. 2000).  Secondly, the decision to arbitrate disputes enjoys a favored status under

both Florida and federal law due since arbitration tends to be an efficient means of settling disputes

which "avoids the delays and expenses of litigation."  *KFC Nat'l Mgmt. Co. v. Beauregard*, 739

So.2d 630, 631 (5th DCA 1999).  Lastly, other important public policy considerations, namely, the

advantage a large corporate defendant would have against diffuse individuals and the substantive

unfairness of forcing hundreds of individuals to assert claims involving common issues of fact and law against a sole party, weigh substantially against the argument that Florida would preclude arbitration on a classwide basis when the arbitration agreement is silent. (*See* Doc. 31 at pp. 14-15).

For these reasons, the Court finds that Orkin has not established its appeal has a likelihood of success on the merits.[1]

## Conclusion

Based on the foregoing, the Court **DENIES** Orkin, Inc.'s and Rollins, Inc.'s Motion for Injunction to Stay Arbitration Proceedings Pending Appeal.

DONE AND ORDERED in Chambers in Orlando, Florida on September __6,_____2005.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[1] Because Orkin has failed to satisfy the two prerequisites of the standard for granting an injunction, namely, irreparable injury and likelihood of success on the merits, the Court will not analyze Orkin's supplemental argument that its appeal meets the standard for absence of substantial harm to other interested persons, or Orkin's argument that its appeal meets the public interest standard.

Copies furnished to:

Counsel of Record